**UNITED STATES of America,**
**Plaintiff,**

v.

**Kenneth Allan SILVER, Defendant.**

**No. 471 CR. 40.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 21, 1971.

Robert G. Renner, U. S. Atty. by Peter J. Thompson, Asst. U. S. Atty., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

Defendant registered with his Local Board No. 89 Ramsey County on September 9, 1965. He was variously classified as II–S and I–A until September 18, 1969, on which date he received his last classification of I–A. On October 28, 1969 he was mailed a notice to report for induction on November 24, 1969. His file was subsequently sent to State Headquarters and his induction was postponed until June 15, 1970 on which date the court finds he knowingly and wilfully refused induction. His refusal to take the symbolic step forward resulted ultimately in the present indictment.

Defendant asserts two specific defenses, each of which challenge the validity of his induction order and allege procedural irregularities. It is of course axiomatic that if defendant's induction order is invalid for any reason, he is not guilty of refusal to submit to induction as charged. *First,* defendant claims certain letters from six different doctors concerning his physical condition, sent to the Board and now appearing in his file together with defendant's own three-page statement appraising his physical condition, were never presented to the Board nor acted upon at any of its meetings. The clerk of the Local Board on

the witness stand testified that these were "matters medical" and were sent to the Armed Forces Entrance and Examining Station (AFEES) at the time of registrant's appearance for induction. She flatly stated they were not brought before the board at any of its meetings. She also testified for whatever significance it has in this case, that the entire file did not go to the examining station, only the medical material.

Defendant's *second* defense is that the Army *violated its own Regulation 601–270 ¶ 4–21* which provides in essence that if a registrant has undergone a medical examination within one year prior to induction and has been found medically qualified, he will at the induction center be required to undergo a physical inspection. Section b of this Regulation provides as follows:

"b. Scope of physical inspection. The examining physician will review the previous medical examination reports (SF 88 and 89) and any accompanying additional documents, and discuss with the examinee any intervening injuries and illnesses, or any other health problems not a matter of record. *The examinee, with clothing removed, will be closely observed by the examining physician to detect the presence of any communicable diseases, and apparent defects not previously recorded.* If additional defects are found, they will be recorded in accordance with paragraph 5–36. Physical inspections may be performed at the recruiting activity effecting enlistments provided a medical officer is assigned to that activity." [Emphasis added]

Defendant testified as did one Randahl Segal, who went through the examination at the induction center at the same time as did defendant, that compliance was not had with this regulation in that both were not examined with any clothing removed except their shirts. The government offered no evidence to the contrary.

As to the first defense it is not necessary to opine thereon. Even if defendant's reliance on United States v. Ford, 431 F.2d 1310 (1st Cir. 1970), is well founded, defendant's second defense is dispositive of this case.

Defendant's second defense, namely that he was not given the required physical inspection and thus was denied procedural due process, is persuasive. Briggs v. United States, 397 F.2d 370 (9th Cir. 1968); United States v. Brown, 438 F.2d 1115 (9th Cir. 1971). In *Briggs* the court stated in reference to the inspection:

"*We could assume that the likelihood of rejection in appellant's case was slight.* The physical inspection is relatively cursory, and appellant has recently passed a more rigorous examination. But the exhaustion of administrative remedies cases are concerned with the same odds. And the physical inspection is not a time consuming resource wasting process. In short, the exigencies of the service do not justify disregard of the regulations in this instance just because the registrant is expected to refuse induction." *Id.* 397 F.2d at 374 [Emphasis added]

The government contends that the *Briggs* holding should be distinguished on two grounds—*first*, that Briggs received no physical inspection at all, while the defendant in the case at bar did, albeit partial; *second*, that *Briggs* and the line of cases descending from it (including *Brown supra*) have turned on the question of actual prejudice to the registrant resulting from failure to perform the requisite physical inspection at the induction center.

The first distinction is clearly immaterial. A partial inspection cannot be held to be an inspection within the meaning of the regulation. With only the shirt removed, half the body or more remained uninspected for the presence of any communicable diseases and apparent defects not previously recorded. The physical defect of which defendant prin-

cipally complained, *i. e.*, a knee injured in an automobile accident, would of course not be revealed at all with only the shirt off.

As to the claim of absence of prejudice to the defendant, an examination of the relevant cases does not disclose that the fact of actual prejudice is the determining factor. While the Ninth Circuit discussed the resultant prejudice in *Brown,* the language of *Briggs,* quoted *supra,* concedes that the likelihood of rejection on medical grounds was slight. Moreover, Briggs basic claim was one of conscientious objection not, as here, medical unfitness. At least two other cases, United States v. Haifley, 300 F. Supp. 355 (D.Colo.1969), and United States v. Thomas, No. 42581 (N.D.Calif. April 20, 1970), 3 SSLR 3176, have held that denial of the requisite physical inspection is prejudicial.

The court need no go so far in this case as to say that failure to accord defendant the physical inspection was prejudicial *per se.* Such was however at least presumptively or *prima facie* prejudicial particularly where the defendant was raising claimed medical grounds for ineligibility. The presumption remains since the government produced no rebutting evidence of any kind.

The government has called attention to the case of United States v. Hedges, 297 F.Supp. 946 (S.D.Iowa 1969), where (at p. 953) the court discussed the failure to accord a registrant a complete physical inspection. There the issue was contested and litigated. The examining physician was called as a witness and the claim of presumptive prejudice was successfully rebutted. This case was affirmed in a short *per curiam* opinion in United States v. Hedges, 441 F.2d 726 (8th Cir. 1971), the opinion being centered on the late crystallization of a claimed conscientious objector status under Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). The failure to make physical inspection and other defenses were disposed of in one sentence. Though decided after *Briggs,* neither opinion refers to it. This court does not deem the *Hedges* case controlling authority for the above reasons, and is persuaded that the better reasoning is reflected in *Briggs* and the other three above cited cases.

A medical rejection from the armed service, were such to follow an inspection, would be for the benefit of the defendant as well as for the Armed Services itself. Welsh v. United States, 404 F.2d 1078, 1085 (9th Cir. 1968).

By failing to inspect the defendant with clothing removed, the government has denied him the possible benefit, however slight, of a rejection for physical reasons, which would have relieved him of the duty to take the symbolic step forward.

Because the Armed Services failed to follow its own regulations regarding a physical inspection at the induction center, the induction procedure was invalid. The court therefore finds the defendant not guilty.